UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

TRUSTEES OF THE LEATHER GOODS,
HANDBAGS, AND NOVELTY WORKERS'
UNION LOCAL 1 JOINT RETIREMENT FUND,

                   Plaintiff,

    -against-

NEW YORK SEWING MACHINE, INC.;
JOHN AND JANE DOES (1-10); and XYZ
CORPORATION (1-10),

                   Defendants.

--------------------------------------------------------X

**REPORT & RECOMMENDATION
19-CV-1717 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, the Trustees of the Leather Goods, Handbags, and Novelty Workers' Union Local

1 Joint Retirement Fund (the "Fund"), brings this civil action against defendants New York Sewing

Machine, Inc. ("New York Sewing"), John and Jane Does (1-10), and XYZ Corporations (1-10) [1]

under the Employee Retirement Income Security Act ("ERISA") as amended to recover

withdrawal liability arising out of a mass withdrawal termination of the Fund.    Complaint

("Compl.") ¶ 1, ECF No. 1.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure,

---

[1] Plaintiff alleges that the John and Jane Doe and XYZ Corporation defendants are currently unknown sole proprietorships and businesses that were under common control with defendant New York Sewing at the time of the Fund's mass withdrawal termination.  Complaint ("Compl.") ¶¶ 9-10, ECF No. 1.  Plaintiff does not seek a default judgment against the John and Jane Doe and XYZ Corporation defendants.  See Mot. Default J. 1, ECF No. 8.  As plaintiff has not identified these defendants and does not seek a default judgment against them, I respectfully recommend that plaintiff's complaint against these unidentified parties should be dismissed without prejudice.  Cf. Trustees of Metal Polishers Local 8A-28A Funds v. Nu Look Inc., No. 18-CV-3816 (PKC)(RLM), 2019 WL 3500908, at *2 n.3 (E.D.N.Y. July 31, 2019) (concluding that plaintiffs intended to withdraw their claims against defendant and dismissing defendant without prejudice); Trustees of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co., No. 18-CV-7224 (AMD)(RER), 2019 WL 3937132, at *8 (E.D.N.Y. Aug. 2, 2019), report and recommendation adopted, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019) (recommending dismissal without prejudice of unidentified defendants).

plaintiff moves for entry of a default judgment solely against defendant New York Sewing for a total amount of $949,972.79, including withdrawal liability, accrued interest, liquidated damages, attorneys' fees, and costs.  Mot. Default J. 1, ECF No. 8.  The Honorable Margo K. Brodie referred plaintiff's default judgment motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).  Electronic Order 5/3/2019; Electronic Order 6/25/2019.  For the reasons set forth below, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part, and that plaintiff should be awarded $782,948 in outstanding withdrawal liability, $4,765 in fees, $70,658.38 in interest accrued through April 30, 2019, plus pre-judgment interest at a rate of $64.35 per day, as well as liquidated damages in an amount equal to the final interest calculation.  To the extent that plaintiff wishes to supplement the record as described in Sections II. D and E, plaintiff shall file any additional information to further support the requested fees and costs within fourteen (14) days of this Report and Recommendation.

## BACKGROUND

ERISA is a comprehensive statutory regime that regulates employee retirement plans,  Trs. of Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc., 692 F.3d 127, 128-29 (2d Cir. 2012) (citing ERISA § 2 *et seq.,* 29 U.S.C. § 1001 *et seq.*), including the retirement plan at issue in this case.  ERISA was designed, *inter alia*, to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans."  Id. at 129.  Multiemployer pension plans are one type of plan regulated by ERISA where several employers "pool contributions into a single fund that pays benefits to covered retirees… for one or more contributing employers."  Id.  To address risks related to widespread employer withdrawals from these multiemployer plans, Congress passed the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), which amended ERISA

to "force withdrawing employers to internalize the costs associated with their withdrawal" and to "require[e] an employer that withdraws from a multiemployer plan to pay its 'proportionate share of the pension plan's unfunded vested benefits,' known as 'withdrawal liability.'" UFCW Local 174 Pension Fund v. 5600 Mkt. Corp., No. 17-CV-5789 (CBA)(CLP), 2018 WL 4403394, at *5 (E.D.N.Y. Aug. 16, 2018), report and recommendation adopted as modified, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018) (citations omitted); see also Trs. of Local 138 Pension Tr. Fund, 692 F.3d at 129-30. A plan may experience a "mass withdrawal" resulting in mass withdrawal liability. A mass withdrawal means: "'(1) [t]he withdrawal of every employer from the plan, (2) [t]he cessation of the obligation of all employers to contribute under the plan, or (3) [t]he withdrawal of substantially all employers pursuant to an agreement or arrangement to withdraw.'" UFCW Local 174 Pension Fund, 2018 WL 4403394, at *2 n.5 (quoting 29 C.F.R. § 4001.2). Mass withdrawal liability is "simply an extension of withdrawal liability," but entails additional procedures and a modified method for calculating an employer's liability. Id. at *6.

Here, the Fund is a multiemployer benefit plan within the meaning of ERISA that is administered in Mineola, New York, within the Eastern District of New York. Compl. ¶¶ 5-6.[2] The Leather Goods, Handbags, and Novelty Workers' Union Local 1 and New York Sewing, a for-profit corporation with its principal place of business in North Bergen, New Jersey, were parties to a collective bargaining agreement (the "CBA"), under which plaintiff was a third-party beneficiary and which required New York Sewing to remit contributions to the Fund on behalf of employees covered by the CBA. Compl. ¶¶ 12, 8. As of December 31, 2013, the Fund experienced a mass withdrawal termination within the meaning of ERISA and its accompanying regulations.

---

[2] The facts in this section are drawn from the uncontested allegations in plaintiff's complaint and accompanying exhibits and are accepted as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (explaining the Court may rely on all the well-pleaded allegations in the complaint on a motion for default judgment).

Compl. ¶ 13 (citing 29 U.S.C. § 1341A(a)(2) and 29 C.F.R. § 4001.2). As a result, New York Sewing and all contributing employers ceased to have an obligation to contribute to the Fund and became obligated to pay withdrawal liability. Compl. ¶ 14 (citing 29 U.S.C. § 1383(a) and 29 C.F.R. §§ 4219.11, 4219.12).

By certified letters dated May 28, 2014, and January 29, 2016, the Fund notified New York Sewing of its withdrawal liability obligations, providing the Fund's calculations and a quarterly payment schedule. Compl. ¶¶ 15-16; see also Compl. Ex. A, ECF No. 1-1; Compl. Ex. B, ECF No. 1-2. Having not received the quarterly payments that were due, the Fund notified New York Sewing, by certified letter dated December 7, 2018, that defendant was in default of its withdrawal liability obligations and offered defendant an opportunity to cure the default. Compl. ¶¶ 17-18; see also Compl. Ex. C, ECF No. 1-3. Having still not received payment, the Fund notified New York Sewing, by certified letter dated February 22, 2019, that it remained in default and demanded immediate payment of the outstanding withdrawal liability amount plus accrued interest. Compl. ¶ 19; see also Compl. Ex. D, ECF No. 1-4. New York Sewing did not remit the withdrawal liability assessed by the Fund and failed to initiate arbitration proceedings to contest its liability. Compl. ¶¶ 20-21.

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 26, 2019, ECF No. 1, and served the summons and complaint on New York Sewing the next day. Aff. of Service, ECF No. 5. After New York Sewing failed to appear or otherwise defend this action, plaintiff requested a certificate of default, which was entered by the Clerk of Court on April 24, 2019. Request for Certificate of Default, ECF No. 6; Certificate of Default, ECF No. 7; see also Fed. R. Civ. P. 55(a). Plaintiff filed the instant motion for a default judgment on April 30, 2019, and simultaneously filed proof of service

of the motion and all supporting papers upon New York Sewing's last known business address pursuant to Local Civil Rule 55.2. Certificate of Service, ECF No. 8-15.[3] Despite proper service of the summons and complaint,[4] defendant has failed to plead or otherwise defend this action.

## DISCUSSION

To obtain a default judgment under Rule 55 of the Federal Rules of Civil Procedure, a party must complete a two-step process. Rodriguez v. Almighty Cleaning, Inc., 784 F.Supp.2d 114, 123 (E.D.N.Y. 2011). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the Clerk's entry of default, the movant "may then make an application for entry of default judgment, pursuant to Fed. R. Civ. P. 55(b)." Rodriguez, 784 F.Supp.2d at 123. If the defendant fails to appear, or move to set aside the default under Rule 55(c), the Court may enter a default judgment. Rose v. Chin, No. 09-CV-4645 (NGG)(LB), 2010 WL 3909350, at *1 (E.D.N.Y. Oct. 1, 2010).

The Second Circuit has an "oft-stated preference for resolving disputes on the merits," making default judgments "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc., No. 08-CV-3168 (CBA)(CLP), 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citation omitted). Although all well-pleaded allegations in the complaint are deemed admitted on a motion for default

---

[3] In addition, on May 2, 2019, plaintiff served a copy of the docket sheet and the Court's April 26, 2019, Order on New York Sewing at its last known business address by certified and overnight mail. Certificate of Service, ECF No. 9.

[4] Plaintiff served the summons and complaint on New York Sewing by serving the Secretary of State on March 27, 2019, and mailing the summons and complaint to defendant's last known address, in accordance with § 307 of the New York Business Corporation Law. Aff. of Service, ECF No. 5; Shah Decl. ¶ 8, ECF No. 8-2; Shah Decl. Ex. 2, ECF No. 8-4. See also N.Y. Bus. Corp. Law § 307(b); Fed. R. Civ. P. 4(h)(1).

judgment, the Court nonetheless retains a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  If the unchallenged allegations establish defendant's liability, the Court then determines the amount of damages due. See Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

### I. Liability

An employer's withdrawal liability is subject to regulations issued by the Pension Benefit Guaranty Corporation ("PBGC"), the agency charged with implementing ERISA's withdrawal-liability provisions. Trs. of Local 138 Pension Tr. Fund, 692 F.3d at 134–35; see also 29 U.S.C. § 1399(c)(1)(D)(ii).  When a multiemployer plan experiences a mass withdrawal, the plan sponsor must notify withdrawing employers that a mass withdrawal has occurred, determine the initial withdrawal liability of each withdrawing employer without regard to the occurrence of a mass withdrawal, notify the employer of the amount of the initial withdrawal liability, and attempt to collect the initial withdrawal liability from the employer.  29 U.S.C. § 1382; 29 C.F.R. § 4219.11(a); 29 C.F.R. § 4219.16(a); 29 C.F.R. § 4219.2(b).[5]  In addition, the plan sponsor must determine each employer's "mass withdrawal liability," which includes both redetermination liability and reallocation liability. 29 C.F.R. § 4219.2(b); 29 C.F.R. § 4219.11(b).[6]  The plan

---

[5] The statute requires that notification upon an employer's withdrawal be "[a]s soon as practicable," 29 U.S.C. § 1399(b)(1); however, failure to strictly comply with the regulations' mass withdrawal notice requirement does not cancel the employer's liability or waive the plan sponsor's claim for such liability, 29 C.F.R. § 4219.16(a)(3).

[6] The regulations define initial withdrawal liability as the withdrawal liability amount determined in accordance with the statute "without regard to the occurrence of a mass withdrawal," redetermination liability as "the sum of an employer's liability for de minimis amounts and the employer's liability for 20–year-limitation amounts," and reallocation liability as "the amount of unfunded vested benefits allocated to an employer in the event of a mass withdrawal." 29 C.F.R. § 4219.2(b).

sponsor must also provide notice of such liability, a payment schedule, and a payment demand. 29 C.F.R. § 4219.16(b)-(c).[7]  If an employer defaults on any payment and the failure to pay is not cured within sixty (60) days after notice of such failure, a plan sponsor may demand immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest. 29 U.S.C. § 1399(c)(5); 29 C.F.R. § 4219.31.  Interest is charged "at rates based on prevailing market rates for comparable obligations, in accordance with regulations prescribed by the corporation." 29 U.S.C. § 1399(c)(6).

An employer may request review of the plan sponsor's withdrawal liability determination; however, any dispute regarding the liability determination must be resolved through arbitration. Trs. of the Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc., No. 13-CV-0198 (MKB)(JO), 2016 WL 5879612, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1275041 (E.D.N.Y. Mar. 31, 2016) (citing 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1)); see also 29 C.F.R. § 4219.16(g).  If the employer fails to initiate arbitration within the statutorily prescribed timeframe, then the plan's withdrawal liability determination becomes "final and binding."  Id.  The plan is not required to supply the Court with underlying calculations to support a finding of withdrawal liability if the defendant employer does not initiate arbitration. Id. (collecting cases); see also Vacca v. Bridge Chrysler Jeep Dodge, Inc., No. 06-CV-3543 (ERK)(AKT), 2008 WL 4426875, at *7 (E.D.N.Y. Sept. 4, 2008) ("It is well-established that when a defendant fails to initiate arbitration under ERISA's provisions, the defendant's withdrawal liability becomes fixed and all defenses to that withdrawal liability are waived.").  If the parties do not initiate arbitration, the plan sponsor may bring an action in federal court to collect the amounts

---

[7] A plan sponsor may provide a combined notice of redetermination liability and initial withdrawal liability. 29 C.F.R. § 4219.16(e).

demanded, which are "due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1).

To prevail on a withdrawal liability payment claim, the plan sponsor generally "must show only that it complied with statutory procedural requirements. Thus, [t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 608–09 (E.D.N.Y. 2017) (internal citations and quotations marks omitted).

Here, the Fund notified New York Sewing that the Fund experienced a mass withdrawal as of December 31, 2013, when all contributing employers ceased to have an obligation to make contributions to the Fund, and as a result, New York Sewing was subject to mass withdrawal liability under ERISA. Compl. Ex A. By letters dated May 28, 2014, and January 29, 2016, the Fund notified New York Sewing of its initial withdrawal liability, redetermination liability, and reallocation liability, and demanded payment according to corresponding payment schedules. Compl. Ex. A, Ex. B. The Fund repeatedly warned New York Sewing of the consequences of defaulting on its payments and potential liability for interest and penalties under ERISA. Compl. Ex. A, Ex. B, Ex. C, Ex. D. Nonetheless, New York Sewing failed to make any of its quarterly payments for its withdrawal liability. Compl. ¶ 17; see also Leventis Decl. ¶ 11, ECF No. 8-7. On December 7, 2018, the Fund notified New York Sewing of its failure to make payments according to the schedule and warned that, if the failure was not cured within sixty (60) days, the Fund would be entitled to the full withdrawal liability amount plus potential penalties. Compl. Ex. C. After New York Sewing did not make the required payments, the Fund notified New York Sewing on

February 22, 2019, that it was in default, the Fund had elected to accelerate the outstanding withdrawal liability, and accordingly the Fund demanded immediate payment plus accrued interest.  Compl. Ex D.  Further, New York Sewing failed to initiate arbitration proceedings to contest its liability.  Compl. ¶ 22.  As plan fiduciaries, the Trustees are entitled to bring this federal action to collect the withdrawal liability.  Compl. ¶ 7; 29 U.S.C. §§ 1451(a)(1), 1451(b).

Based on the foregoing, plaintiff has alleged sufficient facts to establish defendant New York Sewing's liability.  Moreover, because New York Sewing did not initiate arbitration proceedings to dispute its withdrawal liability or the Fund's liability calculations, and the deadline to do so has long since expired, see 29 U.S.C. § 1401(a)(1), 29 C.F.R. § 4219.16(g), the plan's withdrawal liability determination is final and binding.

**II. Damages**

"[I]t is well established that [w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation and internal quotations marks omitted); see also Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.").  On a motion for a default judgment, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citation omitted).  While the Court must ensure there is an evidentiary basis for the damages requested, the Court has discretion in deciding whether to make a determination based on evidence presented at a hearing or based on review of documentary evidence alone without a hearing.  Metro Found. Contractors Inc., 699 F.3d at 234; United Food & Commercial

Workers Local 348 Pension Fund v. Franklin Poly Corp., No. 12-CV-5837 (MKB)(VMS), 2013 WL 4525658, at *6 (E.D.N.Y. Aug. 27, 2013).

Under ERISA, when a judgment in favor of the plan is awarded to compel payment of fund contributions, the Court must award the unpaid contributions, as well as interest on the unpaid contributions, "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions]," and reasonable attorneys' fees and costs. 32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co., No. 18-0857-CV(L), 2019 WL 3917567, at *4 (2d Cir. Aug. 20, 2019) (quoting 29 U.S.C. § 1132(g)(2)).[8]

Here, plaintiff requests a total amount of $949,972.79, which includes: (1) $782,948 for outstanding withdrawal liability; (2) $78,998.43 for interest accrued; (3) $78,998.43 for liquidated damages; (4) $8,443.75 for attorneys' fees; and (5) $584.18 for costs. Pl.'s Mem. Law Supp. Mot. Default J. 2, ECF No. 8-1. As proof of damages, plaintiff provides:

i)    The declaration of George Leventis, Executive Director of the Fund, Leventis Decl., ECF No. 8-7, which appends copies of:
   a. the May 28, 2014, demand letter, which provides the Fund's calculation of defendant's initial withdrawal liability and redetermination liability, Leventis Decl. Ex. 1, ECF No. 8-8;
   b. the January 29, 2016, demand letter, which provides the Fund's calculation of defendant's reallocation liability and total outstanding withdrawal liability, Leventis Decl. Ex. 2, ECF No. 8-9;
   c. the December 7, 2018, letter, notifying defendant of its missed payments and the 60-day window to cure its default, Leventis Decl. Ex. 3, ECF No. 8-10;
   d. the February 22, 2019, letter, notifying defendant of its default and the Fund's demand for accelerated payment, Leventis Decl. Ex. 4, ECF No. 8-11;
   e. plaintiff's calculation of defendant's outstanding withdrawal liability and accrued interest, Leventis Decl. Ex. 5, ECF No. 8-12;
   f. a PBGC webpage, published on November 15, 2013, showing the interest rate

---

[8] Where a plaintiff brings an action pursuant 29 U.S.C. § 1451 to compel an employer to pay withdrawal liability, an employer's failure to make *any* withdrawal liability payment within the time prescribed is treated in the same manner as if the employer made delinquent contributions. See 29 U.S.C. § 1451(b) (emphasis added).

             used to calculate the interest owed by defendant, Leventis Decl. Ex. 6, ECF No. 8-13.

  ii)    The declaration of plaintiff's counsel, Neil V. Shah, Shah Decl., ECF No. 8-2, which appends copies of:

      a.  the summons and complaint in this action, Shah Decl. Ex. 1, ECF 8-3, and the affidavit of service of the summons and complaint, Shah Decl. Ex. 2, ECF 8-4;

      b.  the Clerk of the Court's notice of entry of defendant's default, Shah Decl. Ex. 3, ECF 8-5;

      c.  plaintiff's attorneys' contemporaneous time records, Shah Decl. Ex. 4, ECF 8-6.

Upon review of plaintiff's submissions, I find that an inquest hearing is not necessary to resolve plaintiff's instant motion.

A.  Withdrawal Liability

Plaintiff seeks withdrawal liability in the amount of $782,948.  Pl.'s Mem. Law Supp. Mot. Default J. 2, 5.  On January 29, 2016, the Fund notified New York Sewing of the Fund's final calculation of New York Sewing's outstanding mass withdrawal liability, namely $782,948. See Compl. Ex. B ("When [the] reallocation liability is factored into the Fund's assessment for the three components of mass withdrawal liability, the total amount of withdrawal liability currently outstanding is $782,948."); Compl. Ex. D ("[T]he Fund hereby requires immediate payment of $857,282.30, which amount represents the outstanding amount of the Company's withdrawal liability of $782,948.00, plus accrued interest of $74,334.30[.]"); see also Leventis Decl. ¶ 8, Ex. 2, Ex. 4.  As discussed *supra,* because defendant did not contest the Fund's calculation of New York Sewing's withdrawal liability, the liability amounts demanded by the Fund became due on the schedule set forth by the Fund, and the Fund's calculation of the withdrawal liability became final and binding.  Accordingly, I respectfully recommend that the Court award plaintiff $782,948 for New York Sewing's outstanding mass withdrawal liability.

B.  Interest

Plaintiff requests $78,998.43 for interest accrued through April 30, 2019, calculated at a

rate of three percent.  Shah Decl. ¶ 17; Leventis Decl. ¶ 15.[9]  Mr. Leventis explains in his

declaration that this percentage was used based on the PBGC rates to determine reallocation

liability in effect during December 2013, when New York Sewing's withdrawal liability

obligations first accrued.  See Leventis Decl. ¶ 15.  In support, Mr. Leventis attaches a copy of

"the webpage showing the PBGC interest rates for all relevant periods[.]" Leventis Decl. ¶ 15.[10]

However, plaintiff unfortunately does not substantiate its interest calculation, obliging the Court

to resolve the interest calculation "in accordance with this district's prior decisional law."  Bd. of

Trs. of the UFCW Local 50 Pension Fund v. Baker Hill Packing Inc., No. 13-CV-1888 (JS)(SIL),

2015 WL 867013, at *11 (E.D.N.Y. Feb. 27, 2015) (explaining method for calculating per diem

interest at a yearly interest rate).  The Court calculates $70,658.38 as the interest owed through

---

[9] The Shah and Leventis declarations refer to a rate of three percent per month; however, they provide no statutory or contractual basis for awarding interest compounded monthly.  Indeed, their papers do not expressly request compound interest.  Accordingly, I recommend awarding only simple interest at a per annum rate.  Cf. Cent. Fur Storage Co., 2019 WL 3937132, at *10 n.7 (calculating simple interest at a per annum rate); Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Genrus Corp., No. 17 Civ. 02193 (VSB)(BCM), 2018 WL 8335270, at *7 (S.D.N.Y. Oct. 23, 2018), report and recommendation adopted, 2019 WL 2174088 (S.D.N.Y. May 20, 2019) (recommending a simple interest award); Bd. of Trs. of the UFCW Local 174 Pension Fund v. Karl Ehmer Delicatessen, No. 10-CV-3188 (RJD)(SMG), 2011 WL 4382862, at *3 (E.D.N.Y. Aug. 8, 2011), report and recommendation adopted, 2011 WL 4382515 (E.D.N.Y. Sept. 20, 2011) ("Plaintiff has not provided any support for compounding interest and the court is not aware of any authority for doing so.").

[10] The webpage refers to various rates, including that "[t]he interest rate that PBGC will charge on employer liability, unpaid contributions, and unpaid premiums, for the calendar quarter beginning October 1, and ending December 31, 2013, is 3.00%."  Leventis Decl. Ex. 6.  Although plaintiff's submissions are far from precise, I am satisfied that three percent is an appropriate interest rate in this case, as it does not exceed the rates set by the PBGC and defendant had notice from the complaint that it would be charged a rate of three percent.  See PBGC, Overdue or Defaulted Withdrawal Liability Interest Rates, https://www.pbgc.gov/prac/interest/oodwl (last visited Sept. 11, 2019); Bd. of Trustees of UFCW Local 342 Pension Fund v. Merrick Associated Mkt., Inc., No. 11-CV-4310 (DRH)(AKT), 2012 WL 4049845, at *4 (E.D.N.Y. Aug. 21, 2012), report and recommendation adopted, 2012 WL 4049996 (E.D.N.Y. Sept. 13, 2012) (noting that the Court may take judicial notice of the interest rates compiled by the PBGC); Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 121 (E.D.N.Y. 2013) ("In deciding whether plaintiff may be awarded [] damages, the Court must determine whether plaintiff has provided sufficient notice to defendant…However, when plaintiff clearly seeks such damages in its complaint, sufficient notice has been provided.") (citations omitted).  Cf. Cent. Fur Storage Co., 2019 WL 3937132, at *10 (noting that "interest may be calculated according to 'prevailing market rates for comparable obligations, in accordance with regulations prescribed by the [PBGC]' and that the charged rate is noted in the liability breakdowns appended to the complaint) (citations omitted).

April 30, 2019.  This number was calculated by first taking the number of days between the due date of the first delinquent payment, April 27, 2016,[11] and the date plaintiff chose as the end date for its calculation, April 30, 2019 (1098 days).  Next, the Court calculated the daily interest rate of $64.35.[12]  For the 1098-day period at issue, at a daily rate of $64.35, plaintiff could claim $70,658.38 -- which is $8,340.05 less than the demanded amount.

Although plaintiff only requested accrued interest through April 30, 2019, the interest New York Sewing owes to plaintiff continues to accrue until a default judgment is entered.  See Baker Hill Packing Inc., 2015 WL 867013, at *11 (citing Merrick Associated Mkt., Inc., 2012 WL 4049845, at *5) (awarding daily pre-judgment interest even though plaintiff only requested accrued interest through date default motion was filed).  Accordingly, I respectfully recommend that plaintiff be awarded $70,658.38 in accrued interest through April 30, 2019, plus interest of $64.35 per day from April 30, 2019, until judgment is entered.

C.  Liquidated Damages

Plaintiff requests $78,998.43 in liquidated damages, an amount equal to plaintiff's interest calculation. Shah Decl. ¶ 18.  Plaintiff is entitled to liquidated damages in an amount "equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions]." 32BJ N. Pension Fund, 2019 WL 3917567, at *4 (quoting 29 U.S.C. § 1132(g)(2)).  Here, plaintiff does not provide

---

[11] The Fund sent a letter on January 29, 2016, setting forth a quarterly schedule for withdrawal liability payments.  Compl. Ex. B; Leventis Decl. Ex. 2 ("[P]ayments are due each January 27, April 27, July 27 and October 27, thereafter for an infinite period of time.").  Mr. Leventis' declaration indicates that New York Sewing failed to make any liability payments during the period of "1/1/2016 - 4/30/2019." Leventis Decl. Ex. 5.  As the Fund's demand letter was dated January 29, 2016, the next quarterly due date was April 27, 2016, which the Court adopts as the due date of the first delinquent payment.

[12] The Court multiplied $782,948 (outstanding withdrawal liability) by .03 (yearly interest rate) to arrive at $23,488 (interest per year).  The Court divided the yearly interest figure by 365 days to arrive at $64.35 (interest per day).

the underlying CBA and does not proffer a liquidated damages amount under the plan. Accordingly, the Court shall award liquidated damages based on the interest. As explained *supra*, plaintiff has failed to provide sufficient information to justify its interest calculation and is instead entitled to a lower number, namely $70,658.38.   Accordingly, I respectfully recommend that plaintiff be awarded $70,658.38 in liquidated damages plus the amount of any additional pre-judgment interest awarded.

D.  Attorneys' Fees

Courts in this Circuit award attorneys' fees by calculating the "presumptively reasonable fee." See Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).   After determining a reasonable hourly rate, the Court multiplies that rate by a reasonable number of hours expended to determine the presumptively reasonable fee. See Trs. of Metal Polishers Local 8A-28A Funds, 2019 WL 3500908, at *5 (citation omitted); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  While the Court should consider various factors, see Arbor Hill, 522 F.3d at 184, 190, the presumptively reasonable fee ultimately "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons, 575 F.3d at 174 (citation omitted).  A fee application must be supported by contemporaneous time records that demonstrate "'for each attorney, the date, the hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting, Inc., No. 12-CV-399 (KAM)(RER), 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013) (quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

14

*1) Reasonable Hourly Rate*

To determine the reasonable hourly rate, courts in this Circuit apply "the forum rule" and refer to the hourly rates commonly charged for comparable work in the district by attorneys of comparable skill, experience, and reputation. <u>Restivo v. Hessemann</u>, 846 F.3d 547, 590 (2d Cir. 2017), <u>cert. denied,</u> 138 S. Ct. 644 (2018); <u>Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr. v. Crops Design Corp.</u>, No. 12-CV-4218 (KAM)(RML), 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013).

For comparable ERISA actions, the hourly rate for associates in the Eastern District generally ranges from $200 to $300 for senior associates and $100 to $200 for junior associates. <u>See</u> <u>Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund</u>, 270 F. Supp. 3d at 618 (collecting cases); <u>Trs. of Metal Polishers Local 8A-28A Funds</u>, 2019 WL 3500908, at *5 (citations omitted); <u>Trs. of Empire State Carpenters Annuity v. C.R. Edwards Constr. Co., Inc.</u>, No. 15-CV-5232 (JFB)(ARL), 2016 WL 6875969, at *5 (E.D.N.Y. Nov. 22, 2016). The hourly rate for partners in the Eastern District generally ranges from $300 to $450. <u>See</u> <u>Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund</u>, 270 F. Supp. 3d at 618 (noting that the "[p]revailing rates for experienced attorneys" range from approximately $300 to $400 per hour but some district courts "have recognized slightly higher ranges" for partners ranging from $300 to $450 per hour) (collecting cases).

Plaintiff seeks $8,443.75 in attorneys' fees. Pl.'s Mem. Law Supp. Mot. Default J. 7. This figure is based on a blended rate of $325.00 per hour for the 24.25 hours of work performed by attorneys and $125.00 per hour for the 4.5 hours of work performed by litigation support staff. Shah Decl. ¶¶ 22-25.

| Name | Position | Rate Requested | Hours | Total |
|------|----------|----------------|-------|-------|
| N. Schelberg | Partner | $325/hour | 0.25 | $81.25 |
| N. Shah | Attorney | $325/hour | 5.75 | $1,868.75 |
| K. Hansen | Attorney | $325/hour | 18.25 | $5,931.25 |
| A. Garza | Legal Assistant | $125/hour | 0.25 | $31.25 |
| A. Healy | Lit. Support | $125/hour | 2.50 | $312.50 |
| K. Bigliani | Lit. Support | $125/hour | 1.00 | $125.00 |
| M. McAleavy | Lit. Support | $125/hour | 0.50 | $62.50 |
| K. Grushka | Library | $125/hour | 0.25 | $31.25 |
| **TOTAL** | | | **28.75** | **$8,443.75** |

In support of the fee request, plaintiff submits an affidavit from Neil V. Shah, an attorney at Proskauer Rose LLP, the firm representing plaintiff in this matter, and contemporaneous time records. Shah Decl. ¶¶ 20, 23. Mr. Shah states that he has practiced law since 2010 and has been prosecuting employee benefit actions for approximately four years. Id. ¶ 20. Further, he states that "[t]he attorneys involved in this case are members of Proskauer's dedicated ERISA litigation practice group" and "the requested rates reflect their experience in this area[.]" Id. ¶ 21. Besides stating that "Proskauer LLP, a large international law firm with over 700 attorneys, has, for many years, successfully represented its clients in numerous ERISA and employment-related cases," id. ¶ 19, and noting titles in a chart, id. ¶ 24, Mr. Shah submits no additional information about the experience or qualifications of the other lawyers or support staff with whom he worked on this case. Mr. Shah declares that "[t]he firm bills the Fund at a blended rate for all attorney work that is well in excess of the rates requested in this application[.]" Id. ¶ 22.

Based on the foregoing, I cannot conclude that plaintiff's proposed hourly attorney rate is reasonable. An hourly rate of $325 falls at the lower end of acceptable rates for partners. As Neal Schelberg, identified as a partner in plaintiff's chart, worked only .25 hours on this case, Mr. Schelberg's time on this matter does not justify the high blended rate. Although Mr. Shah may be a senior associate due to his years of practice, his work accounted for less than 25% of the attorney

16

hours billed.  Instead, Mr. Hansen performed the vast majority of work on this case, having worked 18.25 hours, or approximately 75% of the attorney hours billed.  Unfortunately, Mr. Shah submits no information about Mr. Hansen's experience and qualifications.  Moreover, this case does not present particularly novel or thorny issues that would warrant an upward adjustment.

Accordingly, as Mr. Shah has not provided the Court with sufficient information to support the proposed rate, I respectfully recommend that the Court award attorneys' fees at a reduced rate of $200 per hour.  Cf. Trs. of Local 813 Ins. Tr. Fund v. Pers. Touch Funeral Serv., Inc., No. 18-cv-6535 (NG)(VMS), 2019 WL 2295775, *3, (E.D.N.Y. May 30, 2019) (awarding a reduced hourly rate and explaining that $200 "is a rate in the middle of the accepted range for associates in this district.") (citations omitted).[13]

Similarly, the $125 hourly rate requested for the various support personnel who worked on this matter is unjustifiably high when compared to the rates typically awarded in this District.  Cf. Trs. of Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc., No. 16-CV-318 (SJ)(SJB), 2018 WL 4268907, at *6 (E.D.N.Y. Aug. 8, 2018), report and recommendation adopted, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018) (awarding $100 per hour for litigation support staff and collecting cases); Sciascia v. Prime Protective Servs., Inc., No. 13-CV-0800 (ADS)(AKT), 2014 WL 940721, at *9 (E.D.N.Y. Mar. 11, 2014) (noting that courts in the Eastern District have held that $90 per hour is a reasonable rate for paralegals in ERISA cases).  Plaintiff provides no information concerning the background of the litigation support staff that would support the higher proposed rate; moreover, the work described in the time records does not appear to require many

---

[13] In addition, the Court reiterates the concerns expressed by my colleague Judge Reyes that the use of a blended rate "is at odds with the 'presumptively reasonable fee' framework," and "elides key doctrinal considerations. Without knowing how the blended rate was calculated, the district court is impotent to make necessary adjustments; it cannot discern whether individual attorneys are billing at rates not justified by their experience, because those rates are subsumed into a nebulous whole." Cent. Fur Storage Co., 2019 WL 3937132, at *11.

years of experience or atypical skills.  Accordingly, I respectfully recommend that the Court award fees at a reduced rate of $100 per hour for work performed by litigation support staff in this case.

The rate reductions recommended here are not intended to be punitive or to deter plaintiff's attorneys from pursuing work on this matter, rather they should serve as an incentive to submit better quality fee applications.  To the extent that plaintiff seeks to supplement its fee request to establish that higher rates would be appropriate based on the skill, experience, and reputation of the other individuals who worked on this matter with Mr. Shah (but about whom virtually no information was provided), plaintiff is granted leave to supplement the record within fourteen (14) days of this Report and Recommendation.[14]

### 2) Reasonable Number of Hours

"The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of hours spent[.]" Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *11 (E.D.N.Y. Mar. 28, 2014) (citation omitted); see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994).  The number of hours expended on an action is considered unreasonable if the hours are "excessive, redundant, or unnecessary."  Finkel v. Metro. Sign & Maint. Corp., No. 09-CV-4416 (SJ)(CLP), 2010 WL 3940448, at *15 (E.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 WL 3927512 (E.D.N.Y. Oct. 5, 2010) (citations omitted).

Here, the firm spent a total of 28.75 hours preparing and litigating this case.  Shah Decl. Ex. 4.  This total number is relatively high as compared to fee awards in comparable cases.  See Interstate Masonry Corp., 2014 WL 1311709, at *13 (finding 23 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended range from 14 to 28 hours);

---

[14] The Court shall then consider the Arbor Hill factors.  See Arbor Hill, 522 F.3d 182 at 184, 186 n.3, 190.

Gesualdi v. Fortunata Carting Inc., 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case.") (collecting cases).  The Court also notes that counsel spent well over two hours drafting, revising, and reviewing papers to request a certificate of default, which is excessive.  See Shah Decl. Ex. 4. Further, Mr. Shah and Mr. Hansen performed multiple rounds of review and edits for the default motion which seem redundant. See Id.  Lastly, time also appears to be billed from work on other actions: 2.50 hours is listed for "Prepared for five e-filings; e-filed request for certificate of default in five actions; downloaded five entries and ten documents from online, emailed the information to the attorneys, and entered the information onto five dockets."  Id.

Accordingly, I respectfully recommend that the 2.50 hours spent on multiple cases be eliminated and that the Court apply a ten percent reduction to the attorney time billed to account for the excessive hours in this matter.  See Cent. Fur Storage Co., 2019 WL 3937132, at *13 ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate.") (citation omitted).

### 3) Fees' Calculation

In summary, I respectfully recommend that the Court award a total amount of $4,765 in fees, which includes 1) $200 for two hours of work at a rate of $100 for litigation support work; and 2) $4,365 for 21.8 hours at a rate of $200 for attorney work.

### E. Costs

Although plaintiff is entitled under ERISA to recover reasonable costs incurred in pursuing this action, see 29 U.S.C. § 1132(g)(2)(D), plaintiff must show that the costs were actually paid. Pers. Touch Funeral Serv., Inc., 2019 WL 2295775 at *3 (citation omitted).  Here, plaintiff requests $584.18 in costs. Shah Decl. ¶ 26.  These costs include $571.78 for database search services and

$12.40 for copying and printing. Id. However, aside from plaintiff's counsel declaring that plaintiff incurred these costs, plaintiff provides no documentation that these costs were in fact paid and were not merely part of the firm's ordinary overhead. See Trustees of Metal Polishers Local 8A-28A Funds, 2019 WL 3500908, at *6 ("A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney[s'] ordinary overhead.") (citations omitted); cf. Pers. Touch Funeral Serv., Inc., 2019 WL 2295775, at *3 n.2 (noting that counsel's failure to show that they usually bill their clients for online legal research provides an additional basis for denying reimbursement of the expense). Moreover, these are not the type of litigation costs of which the Court can take judicial notice. Cf. Cent. Fur Storage Co., 2019 WL 3937132, at *13 (noting that the Court may take judicial notice of the filing fee).[15]

Accordingly, I respectfully recommend that plaintiff's request for costs should be denied without prejudice based on the current record. Plaintiff is granted leave to file documentation substantiating the costs sought within fourteen (14) days of this Report and Recommendation.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff's motion for a default judgment against New York Sewing should be granted in part and denied in part. Specifically, plaintiff should be awarded a default judgment against defendant New York Sewing, including 1) $782,948 in outstanding withdrawal liability, 2) $70,658.38 in interest accrued through April 30, 2019, plus pre-judgment interest at a rate of $64.35 per day from April 30, 2019, until judgment is entered, and 3) liquidated damages in an amount equal to the final interest calculation. Unless plaintiff supplements its requests within fourteen days as set forth above, I recommend that plaintiff should be awarded $4,765 in fees and $0 in costs. I also respectfully

---

[15] Plaintiff did not request to recover the Court filing fee.

recommend that the complaint against the unidentified defendants John and Jane Does (1-10) and XYZ Corporation (1-10) should be dismissed without prejudice.

Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).

SO ORDERED.

                                                        /S/

Dated: September 19, 2019                           LOIS BLOOM
       Brooklyn, New York                    United States Magistrate Judge